# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF THE STATE OF MICHIGAN

MICHAEL J. CONLIN

     Plaintiff,

V

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., US BANK NATIONAL ASSOCIATION
as trustee for an unknown securitized trust
ORLANS AND ASSOCIATES, P.C., MARSHALL ISAACS,

     Defendants.

Hon. John Corbett O'Meara

Case No. 5:11-cv-15352-JCO-MAR

---

LAW OFFICES OF BRIAN P. PARKER, PC
BRIAN P. PARKER (P54617)
Attorney for Plaintiff
30600 Telegraph Rd., Ste. 1350
Bingham Farms, MI 48025
Tel: (248) 642-6268
Fax: (248) 642-8875
brianparker@collectionstopper.com

DYKEMA GOSSETT, PLLC
Thomas M. Schehr (P54391)
Michael J. Blalock (P68969)
Attorneys for Mortgage Electronic
Registration Systems, Inc. and U.S.
Bank, National Association
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
tschehr@dykema.com
mblalock@dykema.com

---

## PLAINTIFF'S RESPONSE TO DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND U.S. BANK, NA'S MOTION TO DISMISS

Plaintiff, by and through his attorneys, responds to Defendant Mortgage Electronic Registration Systems, Inc.'s ("MERS") and U.S. Bank, NA's ("U.S. Bank") Motion to Dismiss and requests that this Court deny the relief requested by Defendants for the reasons stated in the attached brief.

     Respectfully submitted,

     THE LAW OFFICES OF BRIAN P. PARKER

Dated: December 27, 2011

     /s/ Brian P. Parker
     BRIAN P. PARKER (P 48617)
     Attorney for Defendant

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF THE STATE OF MICHIGAN

MICHAEL J. CONLIN

     Plaintiff,

V

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., US BANK NATIONAL ASSOCIATION
as trustee for an unknown securitized trust
ORLANS AND ASSOCIATES, P.C., MARSHALL ISAACS,

    Defendants.

Hon. John Corbett O'Meara

Case No. 5:11-cv-15352-JCO-MAR

_____/

LAW OFFICES OF BRIAN P. PARKER, PC
BRIAN P. PARKER (P48617)
Attorney for Plaintiff
30600 Telegraph Rd., Ste. 1350
Bingham Farms, MI 48025
Tel: (248) 642-6268
Fax: (248) 642-8875
brianparker@collectionstopper.com

DYKEMA GOSSETT, PLLC
Thomas M. Schehr (P54391)
Michael J. Blalock (P68969)
Attorneys for Mortgage Electronic
Registration Systems, Inc. and U.S.
Bank, National Association
39577 Woodward Ave., Ste. 300
Bloomfield Hills, MI 48304
Tel: (248) 203-0700
Fax: (248) 203-0763
tschehr@dykema.com
mblalock@dykema.com

_____/

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AND U.S. BANK, NA's MOTION TO DISMISS

### TABLE OF CONTENTS

I.   INTRODUCTION ................................................................. 4

II.  STATEMENT OF FACTS ...................................................... 5

III. STANDARD OF REVIEW ...................................................... 7

A.  Fed. R. Civ. P. 12(b)(1) ...................................................... 7

B.  Fed. R. Civ. P. 12(b)(6) ...................................................... 7

1

C.   Fed. R. Civ. P. 9(b)..............................................................................................8

**IV.  ARGUMENT** ..................................................................................................8

A.   MERS Could Not Pass the Note and So the Assignment is Invalid .......................8

B.   MERS Lacked Authority to Assign the Mortgage ...............................................10

C.   Plaintiff Has Standing to Challenge the Nonassignability of a Right; *Livonia*.....................12

D.   Defendants Incorrectly Assess Standing in Federal Court Under State Law.........................13

E.   Plaintiff Alleged and Defendants Committed Fraud..............................................14

F.   Defendants' Fraud Caused Plaintiff Prejudice in the Foreclosure Proceedings.....................16

G.   Defendants Breached the Mortgage Contract ......................................................18

H.   Plaintiff Sufficiently Alleges a Claim for Quiet Title ...........................................18

I.   Plaintiff Sufficiently Alleges Conversion .............................................................19

J.   Even if the Foreclosure Sale Cannot be Overturned and Plaintiff Cannot Achieve Quiet Title, Plaintiff is Not Barred From Seeking Money Damages On His Remaining Claims...........19

**V.  CONCLUSION**..................................................................................................20

## TABLE OF AUTHORITIES

**Cases**

*Bank of New York v. Alderazi,* 28 Misc.3d 376, 900 N.Y.S.2d 821, 823 (N.Y.Sup.Ct. 2010) ...................11

*Bank of New York v. Mulligan,* No. 29399/07, 2010 WL 3339452 at *7 (N.Y. Sup. Ct. Aug. 25, 2010) ..10

*Bender v. Southland Corp.,* 749 F.2d 1205,1216 (6th Cir. 1984)..............................................8

*Cleveland Branch, NAACP v. City of Parma, Ohio,* 263 F.3d 513, 524 (6th Cir.2001), *cert. denied* 535 U.S. 971, 122 S.Ct. 1438, 152 L.Ed.2d 382 (2002) .........................................................13

*Conley v. Gibson,* 355 U.S. 41 (1957); *Jones v. Sherrill,* 827 F.2d 1102, 1103 (6th Cir.1987) ..................7

*Coyne v. American Tobacco Co.,*183 F.3d 488, 494 (6th Cir.1999).........................................13

*Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978) ............................................................8, 16

*Foote v. City of Pontiac,* 161 Mich.App. 60, 65, 409 N.W.2d 756 (1987)....................................9

*Frank v. Dana Corp.,* 547 F.3d 564, 569-70 (6th Cir. 2008).......................................................14

*Ginsberg v. Capitol City Wrecking Co.,* 300 Mich. 712, 717, 2 N.W.2d 892 (1942).......................9

*Gordon Grossman Building Co. v Elliott,* 382 Mich. 596, 604; 171 NW2d 441 (1969)...........................17

*Hoover v. Langston Equip. Assoc., Inc.,* 958 F.2d 742, 745 (6th Cir. 1992) ...................................8

*Horvath v. Langel,* 276 Mich. 381, 386; 267 NW 865 (1936).......................................................17

*Imperial Supply Co., Inc. v. Northern Ohio Bank,* 430 F.Supp.339, 360-61 (N.D.Ohio 1976)..............8, 16

*In re Agard,* 444 B.R. 231, 246 (Bankr. E.D.N.Y. 2011) ...........................................................10

*In re Sheridan,* 2009 WL 631355, at *4 (Bankr.D.Idaho, March 12, 2009)....................................11

*Jordan v. Global Natural Resources, Inc.,* 564 F.Supp. 59, 69 (S.D.Ohio 1983)..................................8, 16

*Landmark National Bank v. Kesler,* 289 Kan. 528, 538, 216 P.3d 158 [2009]............................................11

*LaSalle Bank N.A. v. Lamy,* 12 Misc.3d 1191, 824 N.Y.S.2d 769 (N.Y.Sup.Ct.2006) ..............................10

*LaSalle Nat. Bank v. Lamy,* 12 Misc.3d 1191[A], at *2 [824 N.Y.S.2d 769 (Sup Ct, Suffolk County 2006) ........................................................................................................................................................11

*Livonia Property Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC,* 717 F. supp. 2d 724, 736 (E.D. Mich. 2010) ..................................................................................................................................12

*MERS v. Nebraska Dept. of Banking,* No. S-04-786, 270 Neb. 529, 704 N.W.2d 784 (Neb. 2005)..........10

*MERS v. Saunders,* 2 A.3d 289, 295 (Me. 2010) .........................................................................................10

*Mortgage Elec. Registration System, Inc. v. Southwest,* 2009 Ark. 152, 301 S.W.3d 1 (2009) .................11

*Overton v. Mortgage Electronic Registration Sys.,* Case No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009) ..........................................................................................................................................13

*Palmer v. Palmer,* 194 Mich. 79 (1916) ......................................................................................................17

*Residential Funding Co. LLC v. Saurman, 490 Mich. 909; 805 N.W.2d 183 (2011)* ..................................4

*Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) ..................................................................................................................8, 16

*Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974).............................................................7

*Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S. Ct. 1976, 44 L.Ed.2d 467 (1975) .................................................................................................................16

*Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975) .................................................................................................................8

*Senters v. Ottawa Savings Bank, FSB,* 443 Mich. 45, 56-57; 503 NW2d 639 (1993) ................................17

*Stewart v Wyoming Cattle Ranche Co,* 128 US 383, 388; 9 S Ct 101; 32 L Ed 439 (1888)......................14

*Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)...............................................13

*Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976).....................................................................................7

*Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), *cert. denied,* 469 U.S. 826 (1984)............7

*Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987) ..................................................8, 16

*Worthy v. World Wide Financial Servs, Inc,* 347 F. Supp. 2d 502 (E.D. Mich. 2004) aff'd 192 Fed. Appx. 369 (6th Cir. 2006)..................................................................................................................................17

## Statutes

M.C.L. § 600.2919a ......................................................................................................................................19

## Other Authorities

Black's Law Dictionary 1076 (8th ed 2004) .................................................................................................11

## Rules

Fed. R. Civ. P. 12(b)(1)...................................................................................................................................7

Fed. R. Civ. P. 12(b)(6)...................................................................................................................................7

Fed. R. Civ. P. 8(a).........................................................................................................................................7

Fed. R. Civ. P. 9(b).........................................................................................................................................7

## Treatises

5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1298, at 416 n. 94 (1969) .................. 8, 16

## I.   **INTRODUCTION**

On October 28, 2011, Plaintiff filed this matter in Washtenaw County Circuit Court seeking quiet title and other relief with regards to his home located at 1304 Belmar Place, Ann Arbor, Washtenaw County, Michigan ("Property" or "Subject Property").  Plaintiff contends that the Defendants do not hold a beneficial interest in the property, do not hold an interest in the indebtedness to the property and do not have the ability to foreclose or prove a right in the subject property under MCL 600.2932 and MCR 3.41.  Defendants removed the case to this Court on or about December 7, 2011.

In addition to Plaintiff's property rights claims, Plaintiff challenges the affidavits and other recorded documents signed by Defendant Marshall Isaacs and Defendant Orlans & Associates, P.C.'s ("Orlans") attorney Linda Green, which it has evidence to show were "robo-signed" by persons other than Isaacs and Green and which falsely claim ownership of an interest in the indebtedness and mortgage in the improper parties.

Further, Orlans and Isaacs created and signed an "Assignment of Mortgage" **(Exhibit 1)** which purports to assign the mortgage "together with the note to which the same is collateral" even though it knew its client MERS had no interest in the note.  In fact, the Michigan Supreme Court recently clarified that even though MERS's mortgagee status gives it an interest in the indebtedness **"MERS' status as 'owner of an interest in the indebtedness' does not equate to an ownership interest in the note."** *Residential Funding Co. LLC v. Saurman, 490 Mich. 909; 805 N.W.2d 183 (2011).*  Orlans and Isaacs, as experienced real estate attorneys, knew that the assignment, which purported to also assign the note, was false and fraudulent.

## II.    **STATEMENT OF FACTS**

On or about May 6, 2005, Plaintiff executed an Adjustable Rate Note and with Bergin Financial, Inc. in the amount of $240,000.  As security for the Note, Plaintiff executed a Mortgage **(Exhibit 2)**.  The Mortgage lists MERS as the nominee for lender (Bergin Financial) and as mortgagee under the Mortgage.  The mortgaged property is located at 1304 Belmar Place, Ann Arbor, MI 48103 (the "Property" or "subject property").  Further, the Mortgage provides that the Note may be sold only when transferred together with the mortgage **(Exhibit 2 at Paragraph 20, first sentence)**.  With the loan, Plaintiff purchased the subject property.

Plaintiff refinanced his home loan through Bergin and received a Mortgage Discharge on the property with Linda Green signing as Vice President for Option Once Mortgage on January 3, 2008 and recorded January 11, 2008 **(Exhibit 3)**.  A "Linda Green" also signs a Missing Assignment Affidavit on January 2, 2008 that is recorded on the same January 11, 2008 at 10:59am **(Exhibit 4)**.  The signatures on the two documents appear different and are indicative of the recent discovery that Linda Green is a "robosignor."Linda Green was the subject of a 60 minutes episode where interviewed employees of DocX (the same company used to create the documents in this case) stated on national television that they sat around a table with other employees signing Linda Green's name *thousands of times a day*.[1]

Attached are more examples of suspect assignments and affidavits that assigned rights for MERS or member banks created by the same person, Ron Meharg, and same company, DocX, that created the other fraudulent assignments throughout the United States using Linda Green signatures. Like these cases, Plaintiff's home was taken through foreclosure using these assignments.  **Please see Exhibits 5 and 6 which are examples of false Linda Green**

---

[1] Can be seen at http://www.cbsnews.com/video/watch/?id=7361572n

**assignments here and throughout the country**. Many of these assignments have the same factual scenario as this case: Trust, MERS, Green, DOCX, Ron Meharg and false witnesses.

Five months after refinancing, Orlans and its attorney Marshal Isaacs created an assignment from MERS to U.S. Bank National Associationas Trustee ("U.S. Bank") (with no trust mentioned in any notice or assignment) and records this with Washtenaw County on May 20, 2008 stating in the assignment that it is effective two months before it was recorded, March 15, 2008. Marshal Isaacs signed as Assistant Secretary and Vice President of MERS. (**Exhibit 1**). Pursuant to the assignment, Mr. Isaacs' other employer, Defendant Orlans, began foreclosure by advertisement proceedings against Plaintiff and filed an Affidavit of Posting and Publishing stating that default was made and that the mortgage was then held by U.S. Bank as Trustee.

Marshal Isaacs is also known for being the subject of many robo signing investigations throughout Michigan and Massachusetts. (**Exhibit 7**).   Defendant Orlans, in conducting the foreclosure, did not send the statutory list of housing counselors to Plaintiff when it initiated foreclosure on November 29, 2010. (**Notice to Borrower Attached as Exhibit 8**).  The notaries signing for Isaacs and Green are suspect as well.  See **Exhibit 9** for Ms. Sowald's Application for Michigan Notary Public Commission. Now see **Exhibit 1**, where her signature is placed next to the signature she affixed to the Assignment swearing that Marshall Isaacs signed this document in this matter.  Please see **Exhibit 10** for other Marshall Isaacs signed assignments where Ms. Sowold "signed" swearing that Marshall Isaacs was standing in front of her.  They too have her application signature next to them.

The Property was sold at a Sheriff's sale on or about March 31, 2011 to an entity, U.S. Bank National Association as Trustee (**Sheriff's Deed Attached as Exhibit 11**).

6

## III.   **STANDARD OF REVIEW**

Defendants MERS and U.S. Bank seeks dismissal based upon Fed. R. Civ. P. 12(b)(1), (b)(6) and Fed. R. Civ. P. 9(b) for Plaintiff's fraud claims.

### A.   **Fed. R. Civ. P. 12(b)(1)**

Fed. R. Civ. P. 12(b)(1) provides for a motion to dismiss for lack of subject matter jurisdiction. To survive a 12(b)(1) motion, a plaintiff has the burden of proving jurisdiction. *Martinez v. Dep't of Homeland Security*, 502 F. Supp. 2d 631, 634 (E.D. Mich. 2007) (citing *Rogers v. Stratton Indus.*, 708 F.2d 913, 915 (6th Cir. 1986)). Such motions must be granted if "taking as true all facts alleged by the plaintiff, the court is without subject matter jurisdiction to hear the claim." *Id.* (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### B.   **Fed. R. Civ. P. 12(b)(6)**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) requires the Court to determine whether a cognizable claim has been pleaded in the complaint. The basic federal pleading requirement is contained in Fed. R. Civ. P. 8(a), which states that, a pleading "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir.1976). In its scrutiny of the complaint, the Court must construe all well-pleaded facts liberally in favor of the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1687 (1974).): "In reviewing a dismissal under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint. *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983), cert. denied, 469 U.S. 826 (1984). The motion to dismiss must be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitle her to relief. *Id.* at 158; *Conley v. Gibson,* 355 U.S. 41 (1957); *Jones v. Sherrill,* 827 F.2d 1102, 1103 (6th Cir.1987).

### C. Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 9(b) requires a party to allege fraud or mistake with particularity. Fed.R.Civ. P. 9(b). Under Rule 9(b), Plaintiff "must at a minimum allege the time, place and contentsof the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205,1216 (6th Cir. 1984). In addition, Plaintiff must set forth the identity of the person who made thealleged misrepresentations. *See Hoover v. Langston Equip. Assoc., Inc.*, 958 F.2d 742, 745 (6[th]Cir. 1992). The purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading. *See, e.g.,Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978). The rule may be relaxed where information is only within the opposing party's knowledge, especially in a case where there has been no discovery. *See e.g.,* 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1298, at 416 n. 94 (1969); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir.1987);*Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Jordan v. Global Natural Resources, Inc.,* 564 F.Supp. 59, 69 (S.D.Ohio 1983); *Imperial Supply Co., Inc. v. Northern Ohio Bank,* 430 F.Supp.339, 360-61 (N.D.Ohio 1976).

### IV.   ARGUMENT

### A. MERS Could Not Pass the Note and So the Assignment is Invalid

Because of the way the MERS system is set up, it is impossible to know what unrecorded assignments of the mortgage or transfers of the note occurred without Defendants providing that information, assuming they have it. While MERS acted as a placeholder for the recorded

8

mortgage, Plaintiff's promissory note was passed among MERS members without notice to Plaintiff and eventually placed in a securitized trust for the creation of mortgage-backed securities **(Affidavit of Gregory Tyll attached as Exhibit 12)**. What is clear, however, is that MERS never had any beneficial or ownership interest in the Note at any time during this process.

Under Michigan law, a mortgage is not an estate in land, *Foote v. City of Pontiac,* 161 Mich.App. 60, 65, 409 N.W.2d 756 (1987), citing *Plasger v. Leonard,* 312 Mich. 561, 564, 20 N.W.2d 296 (1945); it is a lien on real property intended to secure performance or payment of an obligation. *McKeighan v. Citizens Commercial & Savings Bank of Flint,* 302 Mich. 666, 670, 5 N.W.2d 524 (1942). A mortgage is a mere security interest incident to an underlying obligation, and the transfer of a note necessarily includes a transfer of the mortgage with it. *Prime Financial Services v. Vinton,* 279 Mich. App. 245, 761 N.W.2d 694, 703 (Mich. App. 2008), citing *Ginsberg v. Capitol City Wrecking Co., 300 Mich. 712, 717, 2 N.W.2d 892 (1942).* For the same reason, a transfer of a mortgage without the underlying obligation "is a mere nullity." *Id.*

The MERS system attempts to sidestep this troubling tenant of real property law by naming MERS as the "nominee" and mortgagee in the mortgage, purportedly giving it the right to retain the status as recorded mortgagee as the note is passed among member banks. MERS' status as mortgagee, however, does not give it any interest in the note itself. While the Michigan Supreme Court recently ruled that MERS could foreclose as mortgagee because its mortgagee status constituted an interest in the indebtedness, the Court was equally clear to explain that MERS held no interest in the Note. "We clarify, however, that MERS' status as an 'owner of an interest in the indebtedness' does not equate to an ownership interest in the note." *Residential Funding Co. LLC v. Saurman,* 490 Mich. 909; 805 N.W.2d 183 (2011).

In this case, the Assignment of Mortgage purports to pass the mortgage "together with the note." **(Exhibit 1)**. In this suit, Plaintiff not only alleges that this statement was fraudulent, but that it is a legal impossibility, making the assignment a mere nullity under the reasoning in *Prime Financial* and *Ginsberg*. The only way that MERS could validly assign the mortgage is if it did in fact acquire an ownership interest in the Note—a fact that MERS vehemently denies doing in any circumstances. e.g. *MERS v. Nebraska Dept. of Banking,* 704 N.W.2d 784 (Neb. 2005); *In re Agard* 444 B.R. 231, 246 (Bankr. E.D.N.Y. 2011). Because MERS never acquired an ownership interest in Plaintiff's Note, it could not validly assign the mortgage and the Assignment of Mortgage is a mere nullity. Other courts analyzing this scenario agree: "Not only is the language vague and insufficient to prove an intent to assign the Note, but MERS is not a party to the Note and the record is barren of any representation that MERS, the purported assignee, had any authority to take any action with respect to the Note. Therefore, the Court finds that the Assignment of Mortgage is not sufficient to establish an effective assignment of the Note." *In re Agard* 444 B.R. 231, 246 (Bankr. E.D.N.Y. 2011).

### B. MERS Lacked Authority to Assign the Mortgage

"MERS's 'nominee' status and the rights bestowed upon MERS within the Mortgage itself, are insufficient to empower MERS to effectuate a valid assignment of mortgage." *In re Agard* at 250. Absent some specific authority, MERS is not empowered to assign the mortgage. *Bank of New York v. Mulligan,* No. 29399/07, 2010 WL 3339452 at *7 (N.Y. Sup. Ct. Aug. 25, 2010); *LaSalle Bank N.A. v. Lamy,* 12 Misc.3d 1191, 824 N.Y.S.2d 769 (N.Y.Sup.Ct.2006) ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee."). *See also MERS v. Saunders,* 2 A.3d 289, 295 (Me. 2010) ("MERS's only right is to record the

mortgage. Its designation as the 'mortgagee of record' in the document does not change or expand that right . . .").

The word "nominee" is defined as "[a] person designated to act in place of another, usu. in a very limited way" or "[a] party who holds bare legal title for the benefit of others." Black's Law Dictionary 1076 (8th ed 2004). "This definition suggests that a nominee possesses few or no legally enforceable rights beyond those of a principal whom the nominee serves." *Landmark National Bank v. Kesler,* 289 Kan. 528, 538, 216 P.3d 158 [2009]. The Supreme Court of Kansas, in *Landmark National Bank,* 289 Kan. at 539, 216 P.3d 158, observed that: "The legal status of a nominee, then, depends on the context of the relationship of the nominee to its principal." Various courts have interpreted the relationship of MERS and the lender as an agency relationship. See *In re Sheridan,* 2009 WL 631355, at *4 (Bankr.D.Idaho, March 12, 2009) (MERS "acts not on its own account. Its capacity is representative."); *Mortgage Elec. Registration System, Inc. v. Southwest,* 2009 Ark. 152, 301 S.W.3d 1 (2009) ("MERS, by the terms of the deed of trust, and its own stated purposes, was the lender's agent"); (*LaSalle Nat. Bank v. Lamy,* 12 Misc.3d 1191[A], at *2 [824 N.Y.S.2d 769 (Sup Ct, Suffolk County 2006)]) ... ("A nominee of the owner of a note and mortgage may not effectively assign the note and mortgage to another for want of an ownership interest in said note and mortgage by the nominee."). *See also Bank of New York v. Alderazi,* 28 Misc.3d 376, 900 N.Y.S.2d 821, 823 (N.Y.Sup.Ct. 2010) (nominee is "'[a] person designated to act in place of another, usually in a very limited way.'") (quoting Black's Law Dictionary).

Not only was MERS unable to transfer a Note to which it had no interest, but MERS could not assign a Mortgage in which it was not granted specific authority to take such action. Therefore, the assignment to U.S. Bank is invalid and void *ab initio*. All actions taken by U.S.

11

Bank based upon the invalid assignment of mortgage were also invalid, keeping proper title to the property in the hands of Plaintiff and giving Plaintiff standing to seek relief in this action.

### C. **Plaintiff Has Standing to Challenge the Nonassignability of a Right;** *Livonia*

The *Livonia* case cited by Defendants to support its position that Plaintiff may not challenge the assignment expressly allows a borrower to challenge an assignment based upon the nonassignability of the right purportedly assigned:

> "[T]he validity of the assignments does not effect *whether* Borrower owes its obligations, but only to *whom* Borrower is obligated. Although **a debtor may assert certain defenses that render an assignment absolutely invalid (such as <u>nonassignability of the right assigned</u>)** he generally may not assert any ground which may render the assignment voidable "because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice."

*Livonia Property Holdings, LLC v. 12840-12976 Farmington Rd. Holdings, LLC*, 717 F. supp. 2d 724, 736 (E.D. Mich. 2010).

MERS did not have any interest in the Note and therefore could not assign the Note. By claiming in the recorded assignment that it did in fact assign the note, MERS and the other Defendants involved in the Assignment of Mortgage created a second *fictional note*, thereby subjecting Plaintiff to an additional party (U.S. Bank) that can now claim interest on the promissory note (and which did claim an interest, foreclose on Plaintiff and is now evicting Plaintiff). It would be an absurd reading of *Livonia* to suggest that *Livonia* shields banks or MERS from liability for creating a fictional note simply because it was created in an assignment. *Livonia* does not protect Defendants from such flagrant abuses and does not protect Defendants from subjecting Plaintiff to double liability from both the actual note holder (a New York trust) and the fictional note holder (U.S. Bank).

By challenging the creation of the fictional note, Plaintiff asserts its right to challenge the assignment based upon the inability of MERS to assign a Note to which it has no ownership interest. The *Livonia* court was clear to point out that a Plaintiff may challenge such nonassignability of the right assigned, and so Defendants' reliance on *Livonia* for dismissal is misguided.

### D. **Defendants Incorrectly Assess Standing in Federal Court Under State Law**

Plaintiff claims a superior title interest in the subject property due to an invalid assignment and invalid foreclosure sale. Plaintiff raised these claims by filing this Complaint prior to the expiration of the redemption period. "[S]tanding is determined as of the time the complaint is filed." *Cleveland Branch, NAACP v. City of Parma, Ohio,* 263 F.3d 513, 524 (6th Cir.2001), *cert. denied* 535 U.S. 971, 122 S.Ct. 1438, 152 L.Ed.2d 382 (2002).

Defendants cite the unpublished Michigan Court of Appeals case of *Overton v. Mortgage Electronic Registration Sys.,* Case No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009) in which the Court affirmed dismissal for lack of standing after the redemption period ended. However, Defendants invalidly rely on the Michigan case law to support its standing arguments in this Court. Standing in this Court must be determined under Federal jurisprudence.

"Standing is `the threshold question in every federal case.'" *Coyne v. American Tobacco Co.,*183 F.3d 488, 494 (6th Cir.1999) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). In an Article III court, where the judicial power is limited to actual "cases" or "controversies," *see* Art. III, § 2, standing is a matter of federal law and does not depend on state law or the party's prior standing in state court. *Id.* at 495, 95 S.Ct. 2197

13

(citations omitted).[2] Because Defendants fail to address Plaintiff's standing under federal law in any of their arguments, dismissal based upon Fed. R. Civ. P. 12(b)(1) would be improper.

### E. Plaintiff Alleged and Defendants Committed Fraud

For the reasons stated above, MERS could not have validly assigned the Note or Mortgage to U.S. Bank. Plaintiff, in its complaint, is quite specific in pleading this fraud. To meet the particularity requirements, a Plaintiff must (1) specify the statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Frank v. Dana Corp.,* 547 F.3d 564, 569-70 (6th Cir. 2008).

In his Complaint, Plaintiff alleged that (2) Marshall Isaacs made the statement that (1) MERS owned the Note and Mortgage and that it was transferring those interests (3) in the Assignment of Mortgage and that (4) those statements were fraudulent because the Note was owned by a trust. Plaintiff's Complaint, Paragraphs 25-40. Plaintiff's Complaint put Defendant on fair notice of the fraud that was being alleged and was done so with enough specificity for Defendants to know the charges against them.

Fraud under Michigan law requires proof that (1) defendants made a material representation; (2) it was false; (3) when defendants made it, defendants knew that it was false or made recklessly without knowledge of its truth or falsity; (4) defendants made it with the intent that plaintiffs would act upon it; (5) plaintiffs acted in reliance upon it; and (6) plaintiffs suffered damage. *Arim v. General Motors Corp.,* 206 Mich. App. 178, 195; 520 N.W.2d 695 (1994). "Fraud may be consummated by suppression of facts and of the truth, as well as by open false assertions", *Fred Macey Co. v. Macey,* 143 Mich. 138, 153; 106 N.W. 722 (1906), since "a suppression of the truth may amount to a suggestion of falsehood". *Stewart v Wyoming Cattle Ranche Co,* 128 U.S. 383, 388; 9 S. Ct. 101; 32 L. Ed. 439 (1888).

---

[2] Art. III, § 2 includes jurisdiction based upon "citizens of different states."

14

Defendants attack Plaintiff's fraud claim on parts (3) and (5) above, stating that Plaintiff failed to allege anything tending to show knowledge on the part of Defendants or reliance on the part of Plaintiff. However, these elements are clearly satisfied in Plaintiff's Complaint.

For Defendants' knowledge that the statements contained in Assignment were false, Plaintiff alleges knowledge in two ways. First, U.S. Bank was trustee for a trust claiming ownership of Plaintiff's Note and therefore knew that MERS did not own the Note and could not transfer it (**Affidavit of Gregory Tyll, Exhibit 12**). Plaintiff, therefore, alleges that Defendants knew that the statements in the assignments made by Defendants Orlans/Isaacs were false. Plaintiff's Complaint at Paragraph 50. Secondly, Plaintiff alleges that U.S. Bank knew that attempted transfers into the trust were made in violation of the Pooling and Servicing Agreement of the trust and were therefore invalid (leaving ownership of the Note with the depositer/lender). Plaintiff's Complaint at Paragraph 37.

Plaintiff's allegations of robo-signing also put Defendants on fair notice of the fraud alleged. Quite clearly, Plaintiff alleges that signatures of Marshall Isaacs, Linda Green and Notary Public Solwold were forged in the Assignment of Mortgage (**Exhibit 1**), the Mortgage Discharge (**Exhibit 3**) and Missing Assignment Affidavit (**Exhibit 4**). Defendants, who used the signatures of these three individuals on thousands of documents daily, knew about the practice of robo-signing. Plaintiff even references a 60 minutes episode implicating DocX, the company used to produce the assignments, in the robosigning scandal.[3]

Further, Plaintiff has continued to uncover and will uncover further evidence of Defendants' fraud through discovery in this matter, which has not started. The purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive

---

[3] Available at http://www.cbsnews.com/video/watch/?id=7361572n

15

pleading. *See, e.g., Ross v. A.H. Robins Co., Inc.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980); *Denny v. Barber,* 576 F.2d 465, 469 (2d Cir.1978). However, the rule may be relaxed where information is only within the opposing party's knowledge, especially in a case where there has been no discovery. *See e.g.,* 5 C. Wright & A. Miller, Federal Practice & Procedure: Civil § 1298, at 416 n. 94 (1969); *Wool v. Tandem Computers, Inc.,* 818 F.2d 1433, 1439 (9th Cir. 1987); *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974), *cert. denied,* 421 U.S. 976, 95 S. Ct. 1976, 44 L.Ed.2d 467 (1975); *Jordan v. Global Natural Resources, Inc.,* 564 F.Supp. 59, 69 (S.D. Ohio 1983); *Imperial Supply Co., Inc. v. Northern Ohio Bank,* 430 F.Supp.339, 360-61 (N.D. Ohio 1976).

Not only has Plaintiff given Defendants fair notice of the fraud alleged, but information regarding the transfers of ownership in the Note and information about the alleged robosigning will be uncovered through discovery. Indeed, it is still quite early in this case and Plaintiff may yet have to amend its complaint to conform to the facts uncovered during discovery. Without Defendants even filing an answer to Plaintiff's Complaint, it is too early to dismiss Plaintiff's fraud claims with prejudice at this juncture.

**F.  Defendants' Fraud Caused Plaintiff Prejudice in the Foreclosure Proceedings**

Although Plaintiff maintains that he has standing to sue because he retained title to the subject property after the invalid foreclosure based upon an invalid assignment, Plaintiff's allegations of fraud also allow him to challenge the completed foreclosure. Plaintiff himself could not have discovered the deficiencies in the assignments and foreclosure and Defendants' fraud, perpetrated by experienced real estate attorneys, hid the deficiencies from Plaintiff and gave the actions an air of legitimacy. Defendants' actions directly resulted in prejudice against

16

Plaintiff in the foreclosure proceedings and caused Plaintiff to lose his right to seek judicial intervention in the nonjudicial foreclosure. The express statements contained in the Assignment of Mortgage and foreclosure notices state clearly that U.S. Bank owned Plaintiff's Mortgage and Note. These false statements prevented Plaintiff from discovering earlier that U.S. Bank did not in fact hold the Note or Mortgage and therefore could not legally foreclose under Michigan's nonjudicial foreclosure statute.

In *Worthy v. World Wide Financial Servs, Inc,* 347 F. Supp. 2d 502 (E.D. Mich. 2004) aff'd 192 Fed. Appx. 369 (6th Cir. 2006), the Court noted that it only applied the laches defense to the plaintiff's fraud claims because it found a "lack of prejudice." *Worthy* at 511.

Further, prejudice resulting from fraud or irregularity allows the Court to set aside the foreclosure sale. *Senters v. Ottawa Savings Bank, FSB,* 443 Mich. 45, 56-57; 503 NW2d 639 (1993) (recognizing that fraud, accident, or mistake would permit a court to equitably intervene in an action for statutory foreclosure by advertisement); *Gordon Grossman Building Co. v Elliott,* 382 Mich. 596, 604; 171 NW2d 441 (1969) (fraudulent conduct may justify equitable intervention in an action for statutory redemption from foreclosure); *Horvath v. Langel,* 276 Mich. 381, 386; 267 NW 865 (1936) (foreclosure action precluded where note and mortgage induced by fraud); *Palmer v. Palmer,* 194 Mich. 79 (1916) (The usual ground urged as an exception to the general rule, justifying the intervention of the court of equity, is that of fraud.)

Plaintiff was additionally prejudiced in the foreclosure proceedings by Defendants' failure to provide notice to Plaintiff of housing counselors. A housing counselor would have uncovered the discrepancies alleged in this lawsuit and may have pointed Plaintiff to an attorney prior to the foreclosure sale **(See Notice, Exhibit 8)**. The facts available at this time, which must be interpreted in favor of the nonmoving party, point to fraud and a lack of statutory notice on

17

the part of Defendants, causing Plaintiff to miss his opportunity to challenge the foreclosure prior to the sale.

### G. Defendants Breached the Mortgage Contract

Plaintiff alleges all the essential elements of a breach of contract claim. Plaintiff alleges that the Mortgage was a contract, that Defendants had a duty under the contract that when transferring the Note without notice to borrower, that it must transfer the Note "together with this security instrument." **(Exhibit 2 at Paragraph 20)**. Plaintiff then alleges that Defendants breached this provision by transferring the Note without the mortgage, thereby preventing Plaintiff from learning the identity of the owner of the Note, causing a break in the chain of title to the property, prejudicing Plaintiff in the foreclosure proceedings and eventually causing there to be a fictional note created by MERS in the later assignment.

Further, Defendants' breach of the Mortgage contract is significant since its breach occurred long before any supposed default by Plaintiff. Defendants' prior material breach of the Mortgage excuses Plaintiff's alleged default. Defendants' unilateral declaration of default on the part of Plaintiff caused Plaintiff further damages, including damage to his credit, late fees and interest charges.

### H. Plaintiff Sufficiently Alleges a Claim for Quiet Title

Plaintiff sufficiently made a prima facie showing of title by showing he received title to the subject property by warranty deed on the same day the Note/Mortgage were executed. Further, Plaintiff goes beyond to show that the Sherriff's Deed acquired through a foreclosure sale based upon an invalid assignment of mortgage is also invalid. Once a prima facie showing of title is presented, the burden shifts to the Defendants, and Defendants have made no attempt to show that they have superior title to the subject property.

## I.   Plaintiff Sufficiently Alleges Conversion

Statutory conversion consists of "buying, receiving, or aiding in the concealment of any stolen, embezzled, or converted property." M.C.L. § 600.2919a. As explained above and alleged in Plaintiff's complaint, Defendants, through a fraudulent assignment in which MERS attempted to transfer a Note to which it had no interest, created a fictional Note for the benefit of U.S. Bank. This wrongful assertion of an ownership interest in Plaintiff's Note subjected Plaintiff to double liability on the Note and constitutes a statutory violation of conversion.

## J.   Even if the Foreclosure Sale Cannot be Overturned and Plaintiff Cannot Achieve Quiet Title, Plaintiff is Not Barred From Seeking Money Damages On His Remaining Claims

If this Court agrees with Defendants' argument that the foreclosure sale is not voidable at this juncture, Plaintiff's harm can be rectified through money damages. Defendants spend the majority of their brief arguing that the foreclosure sale cannot be overturned, but this argument only acts as a defense against Plaintiff's request for the Court to quiet title to the property in favor of Plaintiff.

Plaintiff's claim for Breach of Contract alleges that Defendants separated the Mortgage and Note, thereby breaching the Mortgage Contract, clouding title to Plaintiff's property and entitling Plaintiff to other damages. Plaintiff's conversion claim is for money damages and Plaintiff's fraud claim can be reduced to money damages. Further, Plaintiff's claim for wrongful foreclosure can be redressed with money damages. Certainly, voiding the foreclosure sale is not the only remedy available and its unavailability should not be a basis for dismissal for the vast majority of Plaintiff's claims. The only claim that could possibly be dismissed is Plaintiff's quiet title claim. Plaintiff may still sue for damages resulting from past harms even if he no longer can acquire an interest in the title to the subject property.

## V.   **CONCLUSION**

Defendants' Motion to Dismiss should fail because Plaintiff has standing to sue and Defendants failed to provide federal jurisprudence to show that he does not, Plaintiff has specifically alleged fraud in the assignment and signatures and because Plaintiff's claims state a cause of action.

Defendants' attempt to dismiss this matter is nothing more than an attempt to avoid the real issues brought in this case; that there is a systemic problem in the MERS' electronic registration and assignment procedures resulting from the ambiguous status of MERS as a "nominee."  MERS cannot pass a Note it has no interest in nor can it pass a mortgage to which it is only a nominee.  Defendants would have us believe that MERS can act with impunity with regard to the Note and/or Mortgage, even when it has no real interest in either or any specific grant of authority to pass on either as an agent.  As the Kansas Supreme Court elegantly puts it, "[t]he parties appear to have defined the word [nominee] in much the same way that the blind men of Indian legend described an elephant—their description depended on which part they were touching at any given time."  *Landmark Nat'l Bank v. Kesler,* 289 Kan. 528, 216 P.3d 158, 166-67 (2010).

WHEREFORE, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

THE LAW OFFICES OF BRIAN P. PARKER

Dated: December 27, 2011

\_\_\_/s/\_\_\_Brian P. Parker_____
BRIAN P. PARKER (P 48617)
Attorney for Defendant